# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| Lauren Fleming, individually and on behalf of all others similarly situated, | 1:22-cv-04842 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Dr. Squatch, LLC, | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1. Dr. Squatch, LLC ("Defendant") manufactures, labels, and sells cosmetics described as "natural," such as a "Men's Natural Shampoo" under the Dr. Squatch brand ("Product").

 

**I.     NATURAL CLAIMS ARE IMPORTANT TO CONSUMERS**

2.     Sales of cosmetics based on natural ingredients are growing twice the rate of traditional cosmetics and exceed $50 billion per year.

3.     Consumers value cosmetics labeled as natural because synthetic ingredients are associated with detrimental health and environmental effects.

4.     According to Nielsen, whether a cosmetic product contains natural instead of synthetic ingredients is of high importance to at least half the public, who will pay more for them.

**II.    PRODUCT CONTAINS NON-NATURAL INGREDIENTS**

5.     Despite representation as natural, the Product contains numerous non-natural ingredients.

INGREDIENTS: Water (Aqua), Decyl Glucoside, Glycerin, Coco-Glucoside, Fragrance (Parfum), Citric Acid, Xanthan Gum, Trehalose, Honey, Simmondsia Chinensis (Jojoba) Seed Oil, Sodium Stearoyl Lactylate, Rosmarinus Officinalis (Rosemary) Leaf Extract, Calendula Officinalis Flower Extract, Urtica Dioica (Nettle) Leaf Extract, Equisetum Arvense (Horsetail) Extract, Symphytum Officinale (Comfrey) Leaf Extract, Hydrolyzed Oat Protein, Tocopherol, Gluconolactone, Potassium Sorbate, Sodium Benzoate, Calcium Gluconate.

6.     Decyl Glucoside is not natural because it is made by chemical condensation with glucose polymers.

7.     Glycerin is recognized by federal regulations as synthetic, and is a factory-produced

texturizer created by complex processing. See 7 C.F.R. § 205.605(b).

8. It is commonly used as a filler and thickening agent.

9. A technical evaluation report compiled by the USDA AMS Agricultural Analytics Division for the USDA National Organic Program explains that Glycerin is "produced by a hydrolysis of fats and oils" and is listed in the USDA Organic Program's National List as a "synthetic nonagricultural (nonorganic) substance."

10. The same report lists several methods of producing Glycerin, each of which involve numerous steps that include the use of high temperatures and pressure, hydrogenolysis or saponification, both chemical reactions, and purification to get an end product.

11. Because the global cosmetic industry uses millions of metric tons of glycerin per year, its only viable source is as a byproduct in biodiesel production.

12. Coco-Glucoside is a synthetic ingredient obtained by the condensation of glucose and coconut alcohol with acid catalysts at high temperatures.

13. Fragrance refers to an undisclosed mixture of molecules and compounds which in theory can be unaltered from their original state derived from natural sources.

14. However, many of the compounds in ingredients identified as fragrance are from synthetic sources.

15. Even where a fragrance is entirely from natural plant sources, it involves the use of harmful solvents for extraction and harsh processing to result in the final ingredient.

16. Citric Acid is (2-hydroxy-propane-1, 2,3-tricarboxylic acid) is a synthetic substance.

17. While it has the word "citric" in it, citric acid is no longer extracted from citrus fruit but industrially manufactured by fermenting Aspergillus niger (a mold).

18. Citric acid is recovered from the fermentation broth by a lime and sulfuric acid

process in which the citric acid is first precipitated as a calcium salt and then reacidulated with sulfuric acid.

19. A technical evaluation report for the substance citric acid compiled by the United States Department of Agriculture, Agricultural Marketing Service ("USDA AMS") for the National Organic Program classified citric acid as "Synthetic Allowed."

20. As one of the USDA AMS reviewers commented, "[Citric acid] is a natural[ly] occurring substance that commercially goes through numerous chemical processes to get to [its] final usable form. This processing would suggest that it be classified as synthetic."

21. Xanthan Gum is a polysaccharide derived from the fermentation of sugars by anthomonas campeseri bacterium and purification using isopropyl alcohol.

22. It is listed as a synthetic ingredient by federal regulations and is typically used as a thickening or stabilizing agent. See 7 C.F.R. § 205.605(b).

23. A 2012 article in the Journal of Pediatrics noted that the U.S. Food & Drug Administration issued warnings that products containing xanthan gum have been linked to illness and death in infants

24. Trehalose is a sugar synthesized from plant matter, bacteria, or fungi.

25. Even though it is naturally occurring, trehalose is mass produced by chemical reactions involving maltodextrin and enzymes or an acid reversion of glucose.

26. Sodium Stearoyl Lactylate is an additive, and a mixture of sodium salts of stearoyl lactylic acids and sodium salts of related acids.

27. It is manufactured by the reaction of stearic acid and lactic acid and conversion to sodium salts.

28. Hydrolyzed oat protein is oat protein that has been chemically modified through

hydrolysis, typically using acid.

29. Tocopherol is a synthetic, inert ingredient used pre and post-harvest as an ingredient in pesticide formulations applied to growing crops or to raw agricultural commodities after harvest. See 40 C.F.R. §180.910.

30. Gluconolactone is synthetic and industrially manufactured by removing water from gluconic acid or by enzymatic oxidation of D-glucose, which entails the crystallization of glucono-1,5-lactone from a supersaturated gluconic acid solution.

31. Potassium sorbate is the salt of sorbic acid and chemically manufactured.

32. Sodium benzoate is not natural, because it does not exist in a natural state, and derived from the refining of benzoic acid.

33. Benzoic acid itself is not natural because it is produced by (1) oxidation of naphthalene with vanadium pentoxide, which yields phthalic anhydride, that is then decarboxylated, (2) the mixture of toluene with nitic acid, the product of which is then oxidized, or (3) the hydrolyzation of benzotrichloride, which is then treated with a mineral acid.

34. Calcium gluconate is not natural, because it is chemically manufactured by mixing gluconic acid with calcium hydroxide or calcium carbonate.

### III. CURRENT UNDERSTANDING OF "NATURAL"

35. To assist in ascertaining what consumers believes the term natural means, regulatory agencies have provided guidance.

36. In 2013, the United States Department of Agriculture ("USDA") issued a Draft Guidance Decision Tree for Classification of Materials as Synthetic or Nonsynthetic (Natural).

37. In accordance with this decision tree, a substance is natural as opposed to synthetic if: (a) it is manufactured, produced, or extracted from a natural source (i.e. naturally occurring

mineral or biological matter); (b) it has not undergone a chemical change (i.e. a process whereby a substance is transformed into one or more other distinct substances) so that it is chemically or structurally different than how it naturally occurs in the source material; or (c) the chemical change was created by a naturally occurring biological process such as composting, fermentation, or enzymatic digestion or by heating or burning biological matter.

38. Congress defined "synthetic" to mean a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plants, animals, or mineral sources. 7 U.S.C. § 6502 (2.1).

39. Surveys and other market research, including expert testimony will demonstrate that the term "natural" is misleading because consumers believe the term "natural," when used to describe goods such as the Products, means that the goods are free of synthetic ingredients.

40. Consumer surveys indicate that labels describing cosmetics and personal care products as natural are not expected to contain any synthetic or non-natural ingredients.

41. Consumers lack the meaningful ability to test or independently ascertain or verify whether a product is natural, especially at the point of sale.

42. Consumers would not know the true nature of the ingredients merely by reading the ingredients label.

43. Discovering that the ingredients are not natural and are actually synthetic requires a scientific investigation and knowledge of chemistry beyond that of the average consumer.

44. That is why, even though the ingredients listed above are identified on the back of the Products' packaging in the ingredients listed, the reasonable consumer would not understand – nor are they expected to understand - that these ingredients are synthetic.

45. Natural shampoos made of natural ingredients exist in the marketplace and are

6

technologically and economically feasible.

## IV. CONCLUSION

46. The Product contains other representations which are misleading.

47. Despite the front label statement of "Oat Protein, Jojoba Oil, Honey," the amount of these ingredients is less than consumers would expect.

48. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

49. The Product is sold for a price premium compared to other similar products, no less than approximately $14.00 for 8 FL OZ, a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

## Jurisdiction and Venue

50. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

51. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

52. Plaintiff Lauren Fleming is a citizen of Mundelein, Illinois, Lake County.

53. Defendant Dr. Squatch, LLC is a Delaware limited liability company with a principal place of business in Marina del Rey, Los Angeles County, California.

54. On the website of the California Secretary of State, Defendant lists one member, Yeti Intermediate Holdings II, LLC.

55. Yeti Intermediate Holdings II, LLC is a Delaware limited liability company, located at the same address as Defendant, 4065 Glencoe Ave Ste 300B, Marina del Rey, CA 90292-6079.

56. The sole member of Yeti Intermediate Holdings II, LLC is Jack Haldrup, a citizen of

California.

57. Defendant transacts business within this District through sale of the Product online and/or in select brick-and-mortar retail stores.

58. Venue is in this District because Plaintiff resides in this District and the actions giving rise to the claims occurred within this District.

59. This action should be assigned to the Eastern Division of this District because a substantial part of the events or omissions giving rise to the claim occurred in Lake County, i.e., Plaintiff's purchase of the Product and her awareness of the issues described here.

Parties

60. Plaintiff Lauren Fleming is a citizen of Mundelein, Lake County, Illinois.

61. Defendant Dr. Squatch, LLC is a Delaware limited liability company with a principal place of business in Marina del Rey, California, Los Angeles County.

62. Defendant's annual sales exceed $100 million.

63. Plaintiff is like the majority of consumers who seek to purchase natural products and tries to avoid non-natural ingredients for the reasons above.

64. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, from websites and/or stores, including but not necessarily limited to Defendant's website, in 2021, among other times.

65. Plaintiff bought the Product because she expected that it did not contain non-natural ingredients and that it contained more honey, jojoba oil, and oat protein than it did.

66. Plaintiff relied on the words and images on the Product, on the labeling and/or claims made by Defendant in digital and/or social media.

67. Plaintiff bought the Product at or exceeding the above-referenced price.

8

68. Plaintiff would not have purchased the Product if she knew the representations and omissions were false and misleading or would have paid less for it.

69. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes and/or components.

70. Plaintiff paid more for the Product that she would have paid absent Defendant's false and misleading statements and omissions, and the Product was worth less.

71. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's representations are consistent with its abilities and/or composition.

72. Plaintiff is unable to rely on the labeling of not only this Product, but other similar products, because she is unsure of whether their representations are truthful.

## Class Allegations

73. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged.
>
> **Consumer Fraud Multi-State Class**: All persons in the States of North Dakota, Texas, West Virginia, Virginia, North Carolina, Kentucky, New Mexico, Oklahoma, Utah, Nebraska, South Carolina, Kansas, and Wyoming, who purchased the Product during the statutes of limitations for each cause of action alleged.

74. Common questions of law or fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

75. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

76. Plaintiff is an adequate representative because her interests do not conflict with other

members.

77. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

78. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

79. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

80. Plaintiff seeks class-wide injunctive relief because the practices continue.

### Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*

81. Plaintiff incorporates by reference all preceding paragraphs.

82. Plaintiff relied on the representations and expected the Product did not contain non-natural ingredients and contained more honey, jojoba oil, and oat protein than it did.

### Violation of State Consumer Fraud Acts
### (Consumer Fraud Multi-State Class)

83. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the above-referenced consumer protection statute and prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

84. Plaintiff reserves the right to assert the consumer protection statute of this State on behalf of the Consumer Fraud Multi-State Class.

85. Defendant intended that Plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

<u>Breaches of Express Warranty,</u>
<u>Implied Warranty of Merchantability/Fitness for a Particular Purpose and</u>
<u>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

86. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it did not contain non-natural ingredients and contained more honey, jojoba oil, and oat protein than it did.

87. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions distributed to resellers, and targeted digital advertising.

88. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

89. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant it did not contain non-natural ingredients and contained more honey, jojoba oil, and oat protein than it did.

90. Defendant's representations affirmed and promised that it did not contain non-natural ingredients and contained more honey, jojoba oil, and oat protein than it did.

91. Defendant described the Product so Plaintiff believed it did not contain non-natural ingredients and contained more honey, jojoba oil, and oat protein than it did.

92. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

93. This duty is based on Defendant's outsized role in the market for this type of Product, a trusted innovative company, holding itself out as having special knowledge and experience in this area.

94. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

95. Plaintiff provided, provides, and/or will provide notice to Defendant, its agents,

11

representatives, retailers, and their employees that it breached the Product's express and implied warranties.

96. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

97. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

98. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it did not contain non-natural ingredients and contained more honey, jojoba oil, and oat protein than it did.

99. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected it did not contain non-natural ingredients and contained more honey, jojoba oil, and oat protein than it did, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

100. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

101. Defendant had a duty to truthfully represent the Product, which it breached.

102. This duty was non-delegable, based on Defendant's position, a trusted company, holding itself out as having special knowledge and experience in this area.

103. Defendant's representations and omissions regarding the Product went beyond the

specific representations on the packaging, as they incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first, that it has been known for.

104. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

105. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

106. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, her purchase of the Product.

107. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Fraud

108. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it did not contain non-natural ingredients and contained more honey, jojoba oil, and oat protein than it did.

### Unjust Enrichment

109. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;
2. Injunctive relief to remove, correct and/or refrain from the challenged practices and

representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

3. Awarding monetary damages, statutory and/or punitive damages;

4. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

5. Other and further relief as the Court deems just and proper.

Dated: September 8, 2022

Respectfully submitted,

/s/Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com