**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Lauren Fleming, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 22 C 4842 |
| v. | Hon. LaShonda A. Hunt |
| Dr. Squatch, LLC, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Lauren Fleming filed this putative class action against Defendant Dr. Squatch, LLC for allegedly selling its "MEN'S NATURAL SHAMPOO" product with a deceptive label. Specifically, Plaintiff alleges that the label is misleading because it uses the term "NATURAL" and the words "OAT PROTEIN, JOJOBA OIL, HONEY" even though the product contains "non-natural" ingredients and less of the named ingredients than expected. Defendant moved to dismiss all claims in the complaint under Fed. R. Civ. P. 12(b)(6), on the basis that a reasonable consumer would not have been misled or confused as to the product's contents. For the reasons stated below, Defendant's motion to dismiss [15] is granted in part and denied in part.

**BACKGROUND**

According to the complaint, Defendant manufactures and sells cosmetic products described as "natural" under the brand name of Dr. Squatch. (Compl. ¶¶ 1, 53, 61, Dkt. 1). Plaintiff is a consumer who purchased Defendant's "MEN'S NATURAL SHAMPOO" (the "Product"). (*Id.* ¶¶ 60, 64). The front label of the Product features the description "MEN'S NATURAL SHAMPOO" and the words "OAT PROTEIN, JOJOBA OIL, HONEY". (*Id.* ¶ 1). Despite being described as "NATURAL," Plaintiff alleges the following ingredient list for the Product contains

1

numerous non-natural, synthetic, manufactured, and/or chemically modified or manufactured ingredients:

> INGREDIENTS: Water (Aqua), **Decyl Glucoside**, **Glycerin**, **Coco-Glucoside**, **Fragrance (Parfum)**, **Citric Acid**, **Xanthan Gum**, **Trehalose**, Honey, Simmondsia Chinensis (Jojoba) Seed Oil, **Sodium Stearoyl Lactylate**, Rosmarinus Officinalis (Rosemary) Leaf Extract, Calendula Officinalis Flower Extract, Urtica Dioica (Nettle) Leaf Extract, Equisetum Arvense (Horsetail) Extract, Symphytum Officinale (Comfrey) Leaf Extract, **Hydrolyzed Oat Protein**, **Tocopherol**, **Gluconolactone**, **Potassium Sorbate**, **Sodium Benzoate**, **Calcium Gluconate**.

(*Id.* ¶¶ 5-34) (emphasis added to allegedly non-natural, synthetic, manufactured, or chemically modified or manufactured ingredients).

According to Plaintiff, the current understanding of the term "natural" can be gleaned from various legislative and regulatory sources and surveys. (*Id.* ¶¶ 35-40). Without providing a specific citation for the document or attaching the publication, Plaintiff states that the "Draft Guidance Decisions Tree for Classification of Materials as Synthetic or Nonsynthetic (Natural)" issued by the United States Department of Agriculture (USDA) distinguishes between natural and non-natural or synthetic substances based on three criteria. (*Id.* ¶¶ 36-37). Plaintiff claims the USDA guidance classifies a substance as natural if it comes from a natural source, has not undergone a chemical change that alters the chemical or structural makeup, or the chemical change was created by a naturally occurring process. (*Id.* ¶ 37).

Plaintiff also points to legislation, which defines the term "synthetic" for purposes of organic certification in agriculture as follows: "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes." (*Id.* ¶ 38); 7 U.S.C. § 6502(22). Finally,

2

Plaintiff refers to unidentified surveys demonstrating that consumers believe the term "natural" means that products are free of and do not contain any non-natural or synthetic ingredients. (*Id.* ¶¶ 39-40). Furthermore, Plaintiff asserts that consumers would not know the true nature of ingredients in the Product by merely reading the ingredient list. (*Id.* ¶ 42). Rather, Plaintiff claims that scientific investigation and specialized knowledge is necessary to discover whether ingredients are natural. (*Id.* ¶ 43). Plaintiff also alleges that, despite the words "OAT PROTEIN, JOJOBA OIL, HONEY" appearing on the front of the Product's label, the amount of those ingredients is less than consumers would expect. (*Id.* ¶ 47).

Plaintiff purchased the Product in 2021 and at other times from stores and websites, including Defendant's website. (*Id.* ¶ 64). Plaintiff says that she paid more for the Product "because she expected that it did not contain non-natural ingredients and that it contained more honey, jojoba oil, and oat protein than it did." (*Id.* ¶¶ 65, 70). When Plaintiff can do so with assurances about the Product's ingredients, she will purchase the Product again. (*Id.* ¶ 71). But for now, Plaintiff believes that she is unable to rely on the labeling of Defendant's Product and other similar products. (*Id.* ¶ 72). Defendant sells the product for no less than $14.00 for an eight-ounce bottle, which is a premium compared to other similar products. (*Id.* ¶ 49). If it were not for the use of the term "NATURAL" and the words "OAT PROTEIN, JOJOBA OIL, HONEY" on the front label of the Product, Plaintiff believes that Defendant would have had fewer sales of the Product and at lower prices. (*Id.* ¶ 48).

Plaintiff sued Defendant on behalf of herself and others, asserting causes of action under the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 ILCS 505/1-505/12 and other states' consumer fraud statutes; for breaches of express and implied warranties and violation of the Magnuson Moss Warranty Act (MMWA), 15 U.S.C. §§ 2301-2312; and for

negligent misrepresentation, fraud, and unjust enrichment. For these claims, Plaintiff seeks injunctive relief, restitution, disgorgement, damages, and attorneys' fees and costs.

## **LEGAL STANDARDS**

Rule 12(b)(6) permits a party to move for dismissal based on a pleading's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In determining whether a complaint states a claim under Rule 12(b)(6), courts must accept all non-conclusory factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In addition, the Court must construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor. *Levy v. W. Coast Life Ins. Co.*, 44 F.4th 621, 626 (7th Cir. 2022). While ruling on a motion to dismiss for failure to state a claim, a court may generally consider only the plaintiff's complaint, exhibits to the complaint, matters central to the plaintiff's claim and incorporated into the complaint by reference, and items subject to judicial notice. *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).[1] Applying these principals, a complaint will survive a motion to dismiss if it "states a plausible claim for relief." *Ashcroft*, 556 U.S. at 679 (2009) (citing *Twombly*, 550 U.S. at 556). To state a plausible claim for relief, a complaint must "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679. The movant has the ultimate burden to show that dismissal is warranted. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

---

[1] A party opposing a Rule 12(b)(6) motion may elaborate on factual allegations so long as the new elaborations are consistent with the pleadings and submit materials outside the pleadings to illustrate the facts the party expects to be able to prove. *Id.*

**DISCUSSION**

Defendant primarily contends that Plaintiff failed to sufficiently allege the Product label is misleading because Plaintiff did not provide a plausible definition of the word "natural," Defendant's website identifies two ingredients as "man made," and the label says nothing about the amounts of "oat protein, jojoba oil, [and] honey" contained in the Product. Defendant also argues that Plaintiff has not adequately pled the non-consumer fraud claims. Plaintiff disputes these contentions. As discussed below, the Court concludes that Plaintiff's consumer fraud and unjust enrichment claims are plausible; however, the remaining claims will be dismissed.

**I.      Consumer Fraud Claims**

"The ICFA 'is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices.'" *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010) (quoting *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 416 (2002)). "In order to state a claim under the ICFA, a plaintiff must show: '(1) a deceptive or unfair act or promise by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce.'" *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014) (quoting *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012)). "[A] practice is deceptive 'if it creates a likelihood of deception or has the capacity to deceive.'" *Rudy v. Family Dollar Stores, Inc.*, 583 F. Supp.3d 1149, 1158 (N.D. Ill. 2022) (quoting *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019)). The Seventh Circuit has explained that "deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used," as "[w]hat matters most is how real consumers understand and react to the advertising." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 477-79 (7th Cir. 2020).

ICFA claims often involve disputed questions of fact and are therefore generally not suitable for resolution on a motion to dismiss. *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 756 (N.D. Ill. 2015).

Defendant attacks Plaintiff's consumer fraud claims on the grounds that "(1) Plaintiff fails to offer a plausible definition of 'Natural,' and (2) Plaintiff reviewed [Defendant's] website, which specifically identifies two at-issue ingredients as 'Man Made.'" (Def. Mem. at 4, Dkt. 15). Neither argument is persuasive. First, the complaint strings together different legislative and regulatory guidance and surveys to define "natural" as products containing ingredients from natural sources that have not undergone certain changes and are free from non-natural or synthetic ingredients (Compl. ¶¶ 35-40). Defendant challenges the relevance of Plaintiff's sources for the definition because the USDA guidance applies to organic food not cosmetics, a reasonable consumer cannot be expected to be aware of complex regulations, and surveys are too speculative and vague. But the Court is not convinced that those issues render Plaintiff's definition of "natural" implausible.

Plaintiff does not claim that the USDA guidance is applicable to the Product, that Plaintiff or a reasonable consumer would be aware of complex regulations, or that the surveys conclusively establish a common understanding of the term "natural." Rather, Plaintiff draws on these sources to support what she alleges to be her understanding and a reasonable consumer's understanding of the word "natural." Although Defendant has cited cases calling the significance of those sources into question in this context, Defendant has not provided any authority that would require the Court to dismiss the complaint under these circumstances.

Defendant's other argument is also lacking. Indeed, numerous courts have rejected similar contentions that using descriptions such as "NATURAL" and lists of specific ingredients such as "OAT PROTEIN, JOJOBA OIL, HONEY" on the front label cannot be misleading because a product's back label or company's website contains an ingredient list. *See Rudy*, 583 F. Supp. 3d

6

at 1159-60 (citing *Bell*, 982 F.3d at 476) ("We . . . join our colleagues in at least three other circuits in holding that an accurate fine-print list of ingredients does not foreclose as a matter of law a claim that an ambiguous front label deceives reasonable consumers."); *York v. Andalou Nats., Inc.*, No. 16 C 894, 2016 WL 7157555, at *3 (S.D. Ill. Dec. 8, 2016) (collecting cases)). At least one court in this district has extended that holding to ingredient lists provided on a company's website. *Terrazzino v. Wal-Mart Stores, Inc.*, 335 F. Supp. 3d 1074, 1083-84 (N.D. Ill. 2018) (rejecting argument that ICFA claim should be dismissed because Plaintiff purchased product on website containing ingredient list).

Although Plaintiff alleges that she purchased the Product in both stores and on websites, including Defendant's, Plaintiff does not allege that she ever read the back-label or website ingredient list. Nor does she allege what information she reviewed on Defendant's website or how accessible (or not) the ingredient list is. Thus, it is unclear whether Plaintiff reviewed the ingredient list and whether the ingredient list page on Defendant's website was readily available to her or "fairly inconvenient and even arduous to access[.]" *Id.* at 1083.

At the pleading stage, the complaint must be read in the light most favorable to Plaintiff and reasonable inferences must be drawn in Plaintiff's favor. The Court will not presume that because she purchased the Product on Defendant's website, she also reviewed the ingredient list or was even aware of it. Indeed, if, as Plaintiff alleges, it is important to her that products she purchases are "natural," then it would make little sense for her to have reviewed the website showing two ingredients are "Man Made" and still bought the Product. Ultimately, these are questions of fact that will need to be explored during discovery, but at this juncture, the Court cannot say, as a matter of law, that Defendant has shown that Plaintiff has failed to state a claim for consumer fraud violations. Accordingly, the Court follows the reasoning in *Terrazzino* and

7

declines to dismiss these claims "simply because an ingredient list was included on the website selling the product." *Terrazzino*, 335 F. Supp. 3d at 1084. The consumer fraud claims may proceed.

## II.    <u>Warranty Claims</u>

In contrast, Plaintiff's state and federal warranty claims fail for a number of reasons. Under Illinois law, one of the requirements for pleading breach of warranty is that the plaintiff must have made "a demand upon the defendant perform under the terms of the warranty" before litigation. *Ibarrola*, 83 F. Supp. 3d at 759-60 (quoting *Hasek v. DaimlerChrysler Corp.*, 319 Ill. App. 3d 780, 793 (1st Dist. 2001)). This pre-suit demand requirement does not apply, however, where a plaintiff alleges "a physical injury or when the defendant had actual knowledge of the product's defect." *Id*. at 760.

Plaintiff's complaint includes two conclusory allegations about notice to Defendant. (Compl. ¶¶ 95-96). However, both allegations are mere recitations of Plaintiff having provided notice and Defendant having received notice, but not that such notice was pre-suit. (*Id.*) Tellingly, in Plaintiff's brief, she does not claim to have made any pre-suit demand nor does she argue about fitting within an exception. Her only response is that she filed a lawsuit. (Pl. Resp. at 7-8 (citing *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 155 F. Supp. 2d 1069, 1110 (S.D. Ind. 2001)). But the cited case is inapposite. *Bridgestone* dealt with notice under other states' versions of the Uniform Commercial Code and explained that "some courts have held, with varying degrees of analysis, that the filing of a lawsuit can, at least in some instances, satisfy the notice of breach requirement[,]" while pointing to an Illinois case "holding that under Illinois law only a consumer buyer who suffered a personal injury may satisfy [the U.C.C. breach of warranty demand provision] by filing suit[.]" *Bridgestone*, 155 F. Supp. 2d at 1110 (citing *Connick v. Suzuki Motor Co., Ltd.,* 174 Ill. 2d 482, 495 (1996)). In other words, *Bridgestone* confirmed that an exception to

the pre-suit demand *could* apply, but Plaintiff makes no effort to show that any exception actually *does* apply here.

As such, Plaintiff's claims for breach of warranty under Illinois law fail. And consequently, her federal warranty claim also fails because the "ability to sustain a cause of action under the [MMWA] is dependent on the existence of an underlying viable state-law warranty claim." *Schiesser v. Ford Motor Co*., No. 16 C 730, 2016 WL 6395457, at *4 (N.D. Ill. Oct. 28, 2016). For these reasons, Plaintiff's warranty claims are dismissed.

## III. Negligent Misrepresentation

Illinois law recognizes the economic loss doctrine, "which holds that remedies for economic losses should be obtained through contract claims, not tort claims[,]" such as negligent misrepresentation. *Sneed v. Ferrero U.S.A., Inc.*, No. 22 CV 1183, 2023 WL 2019049, at *5 (N.D. Ill. Feb. 15, 2023) (citing *Brogan v. Mitchell Intern., Inc*., 181 Ill.2d 178 183-84, 229 Ill. Dec. 503, 692 N.E.2d 276 (1998)). Thus, courts in this district consistently dismiss negligent misrepresentation claims under the economic loss doctrine in cases where the claims are based on deceptive trade practices. *See, e.g.*, *Sneed*, 2023 WL 2019049 at *5; *Kinman v Kroger Co.*, 604 F. Supp. 3d 720, 727-28 (N.D. Ill. 2022); *Rudy*, 583 F. Supp.3d at 1164-65. Although an exception to the economic loss doctrine exists for claims where a defendant is "in the business of supplying information for the guidance of others in their business transactions[,]" *Moorman Mfg. Co. v. Nat'l Tank Co*., 91 Ill. 2d 69, 88 (1982), that exception is limited to defendants who provide "intangible services, such as accounting services," and does not "apply to information provided by a purveyor of tangible products[,]" *Kinman*, 604 F. Supp. 3d at 727-28.

Defendant argues that the economic loss doctrine bars the negligent misrepresentation claim here. Plaintiff responds that this case falls under an exception because Defendant is in the business of supplying information for the guidance of consumers in its role as a seller of high-

quality natural personal care products. Not so. Regardless of Defendant's role in the marketplace, the Product is a tangible good, which means that the exception to the economic loss doctrine does not apply. *See Kinman*, 604 F. Supp. 3d at 727-28. Accordingly, Plaintiff's negligent misrepresentation claim is dismissed.

## IV. <u>Fraud</u>

"Under Illinois law, the elements of common-law fraud are: '(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement.'" *Kinman*, 604 F. Supp. 3d at 731 (quoting *Connick*, 174 Ill. 2d at 496). Fraud must be alleged with particularity according to Fed. R. Civ. P. 9(b), which means "describing the who, what, when, where, and how of the fraud." *Camasta*, 761 F.3d at 737.

Plaintiff's fraud claim consists of a single sentence: "Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it did not contain non-natural ingredients and contained more honey, jojoba oil, and oat protein than it did." (Compl. ¶ 108). As the Court has noted before in a similar case filed by counsel for Plaintiff, barebones fraud allegations such as these have repeatedly been dismissed as conclusory. *See Bruno v. Am. Textile Co., Inc.*, No. 22 C 2937, 2023 WL 6976826, at *5 (N.D. Ill. Oct. 23, 2023). These allegations are no different. Plaintiff's fraud claim is therefore dismissed for failure to satisfy the heightened pleading requirement under Rule 9(b).

## V. <u>Unjust Enrichment</u>

"Under federal pleading standards, a plaintiff may plead claims in the alternative, even if the claims are contradictory." *Rudy*, 583 F. Supp. 3d at 1166 (quoting *Prudential Ins. Co. of Am. v. Clark Consulting, Inc.*, 548 F. Supp. 2d 619, 623 (N.D. Ill. 2008)); *see also*, Fed. R. Civ. P.

8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency"). Defendant argues only that Plaintiff's unjust enrichment claim fails because it is "premised on the same theory of deception as her ICFA claim." (Def. Mem. at 14). As explained above, Plaintiff's ICFA claim is sufficiently pled, so this is not a reason for dismissal. To the extent Defendant argues that the claim is duplicative of or inconsistent with the ICFA claim, the Court rejects that argument because parties are allowed to plead in the alternative under Rule 8. As such, Plaintiff's unjust enrichment claim may proceed.

## VI. <u>Injunctive Relief</u>

On yet another issue for which counsel for Plaintiff has been "consistently and soundly rejected," Plaintiff maintains that she has standing to seek injunctive relief because of her inability to rely on the labeling of Defendant's product and other similar products. *See Bruno,* 2023 WL 6976826, at *7 (listing cases dismissing requests for injunctive relief for lack of standing). "Courts in this district consistently hold that plaintiffs bringing deceptive trade practice claims based on past illegal conduct do not have standing to seek injunctive relief because the plaintiff is aware of the allegedly deceptive practices and any potential for future harm is speculative." *Id.* at *6 (citing *Kinman,* 604 F. Supp. 3d at 732; *Rudy*, 583 F. Supp. 3d at 1167; *Chiappetta v. Kellogg Sales Co*., Case No. 21 C 3545, 2022 WL 602505 at *8 (N.D. Ill. Mar. 1, 2022)).

The same is true for Plaintiff here. Simply put, she lacks standing to seek injunctive relief as to Defendant's product because she is aware of the alleged deception, so any future harm is speculative, to say the least. Moreover, to the extent Plaintiff seeks injunctive relief as to other similar products, she lacks standing because any such claims are not fairly traceable to Defendant's conduct and are irrelevant to this suit. As such, Plaintiff's claims for injunctive relief are dismissed.

## <u>CONCLUSION</u>

For the reasons stated above, Defendant's motion to dismiss is granted in part and denied in the part. Plaintiff has stated claims for consumer fraud and unjust enrichment. All other claims are dismissed. Defendant must file an answer to the surviving claims by May 16, 2024.

**DATED**: April 18, 2024                    **ENTERED**:

_____
LASHONDA A. HUNT
United States District Judge

12